```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :    **MEMORANDUM**
         -against-                                          :    **DECISION AND ORDER**
                                                            :
                                                            :    18-cr-307 (BMC) (LB)
                                                            :
LISA MARIA HYMAN,                                           :
                                                            :
                                    Defendant.              :
                                                            :
----------------------------------------------------------  X
```

**COGAN,** District Judge.

Defendant is charged with importing at least 500 grams of a substance containing cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii), as well as with possession with intent to distribute the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II). She moves to suppress her post-arrest statements to law enforcement at three separate points in time. The Court held an evidentiary hearing regarding the statements and grants in part and denies in part defendant's [54] motion.

I.

The undisputed facts are that soon after arriving at JFK Airport, defendant was found in possession of two bags containing a substance that the authorities say field-tested positive for cocaine. Customs and Border Protection officers thereafter arrested defendant and took her to a private, un-surveilled room within the airport. In that room, defendant engaged in at least some discussion with the officers regarding defendant's conduct and the circumstances of her arrest.

Sometime later, Homeland Security Investigations Special Agents Robert Dunn and Gregory Freudenberg arrived at the private room where defendant was being held. One of the agents administered <u>Miranda</u> warnings at the airport terminal and defendant invoked her rights,

declining to speak without an attorney present.  At some point in time surrounding the Miranda warnings, defendant's phone rang and defendant offered to answer the call.  Perhaps in response, the agents asked defendant if she wanted to participate in a controlled delivery of the narcotics to the person who was coming to pick her up.  Defendant declined, indicating that the person coming to pick her up was not involved.

Later that morning, the agents transported defendant to the Metropolitan Detention Center ("MDC").  During transport to the MDC, while in the back of the agents' car, defendant made several incriminating statements, including that she had been set up and that she had been advised what to say if arrested.  Defendant was arraigned and assigned an attorney the next day.

A little over three weeks after the arraignment, defendant was released to Immigration and Customs Enforcement ("ICE") on an immigration detainer.  While in ICE's custody, an officer spoke with defendant, who again made possibly incriminating statements.

II.

With regard to the statements defendant made at the airport, defendant avers that she had not yet been Mirandized and she therefore asserts that there is an irrebuttable presumption of compulsion as to those statements.  Special Agent Dunn does not recall whether defendant had been Mirandized or had invoked her right to counsel at the time.  Nevertheless, the Government has advised the Court that it "does not intend to introduce these statements in its case-in-chief."

With regard to the statements defendant made during her transport to the MDC, defendant sets forth in her affidavit that:

> I was taken to a car in handcuffs.  Once inside the car, I asked: "Where are you taking me?"  The agents told me that I was going to prison.  I began to cry, and the agents said: "Crying won't help you."  Then they told me that I should have cooperated and helped to catch the person outside.  I responded that I had been set up.

The Government disputes this version of the events and contends that even if true they are insufficient to warrant suppression. At the hearing, the Government's only witness, Special Agent Dunn, testified that he did not remember much about his encounter with defendant, including if he or his partner drove the car; if his partner had a gun; if the car's lights and sirens were on; if defendant was handcuffed during the car ride; or if he made any statements that he failed to include in his report.

Special Agent Dunn testified that he *does* remember, however, that defendant was crying in the car and that he was hopeful that defendant would talk to him that day. He also recalls – and duly noted in his report – that during the car ride defendant said "that someone set her up," "that there was also a gentleman coming from Long Island to come pick up the stuff from Queens," "that someone bought her her ticket," and that "she was coached . . . to say something along the lines of 'she bought this from the store' if she was stopped by customs."

Although Special Agent Dunn does not remember specifically what he or his partner said in the car, he testified that he does not believe that he would have said anything along the lines of "crying won't help you" or "you should have cooperated." The bases of Special Agent Dunn's belief are twofold. First, it is neither his "standard practice" nor his "personality" to say something like that. Second, any such statements were not mentioned in his report written within three days of the transport.

Finally, with regard to the statements defendant made to ICE, defendant characterizes the interaction as an in-custody interrogation "about the alleged offense," while the Government simply says that "an enforcement officer took a sworn statement from the defendant regarding her application for admission as a visitor to the United States." Again, however, the Government maintains that it does not intend to offer the contents of these statements in its case-in-chief.

III.

As an initial matter, the Government has made it clear that it does not intend to offer either defendant's statements at the airport or defendant's statements to ICE as evidence in its case-in-chief. Defendant's motion to suppress as to these statements is therefore denied as moot, without prejudice to renew should the Government attempt to use them for its case-in-chief or to cross-examine defendant.

Turning to the statements defendant made while being transported to the MDC, the Court finds that the Government has not met its burden of proving that the statements were made spontaneously, without encouragement from at least one of the agents in the car.

If an individual "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda v. Arizona, 384 U.S. 436, 473-74 (1966). For Miranda purposes, "the term 'interrogation' . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 292 (1980). Whether a statement was made as a result of unlawful interrogation is determined by "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991).

When a defendant claims the government obtained an incriminating statement in violation of Miranda, the burden shifts to the government to prove, by a preponderance of the evidence, that the statement was made voluntarily. See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). Therefore, if a defendant invokes her right to remain silent prior to interrogation,

4

the Government must show that any subsequent incriminating statement "was the product of a free and deliberate choice rather than intimidation, coercion or deception." Id. at 170 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).  In short, the Government must show that the defendant would have waived her prior invocation of rights "in the absence of police overreaching."  Id.

Moreover, "even if a conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation."  Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983).  In any event, an inquiry or statement "relating to routine incidents of the custodial relationship" does not "initiate" a conversation under a Miranda analysis.  Id. at 1046.

The Court holds that the Government did not quite meet its burden of showing that defendant incriminated herself spontaneously, unsolicited by the agents.  This is not to say that the Court disbelieves Special Agent Dunn's testimony – it doesn't.  Rather, the problem is the substantial gaps in his memory and the report as to his own actions, as well as to those of Special Agent Freudenberg, were too significant to provide a satisfactory alternative to defendant's version of events.  Nor was Special Agent Dunn's testimony about his "standard practice" sufficient to convince the Court that defendant must have spontaneously made the incriminating statements.

Special Agent Dunn was unable to recall most of the details of the car ride.  He couldn't remember who was driving, whether the sirens were on, or even whose car they were in.  He also couldn't recall whether he said anything during the car ride that he had not memorialized in his

5

report. But this report was clearly not an exhaustive record. It didn't even contain the statements that Special Agent Dunn is almost certain were made, including that the agents were taking defendant to the MDC, that defendant would be speaking to an attorney, or that if defendant wanted to cooperate, she could talk to her attorney about doing so. According to Special Agent Dunn, he only included "important things that [he] thought [were] important in the case." The omissions from a complete story, not cured by either Special Agent Dunn's testimony or his report, mean that the Government has not met its burden of proof.

It is also significant that Special Agent Dunn's testimony of the car ride is silent about what Special Agent Freudenberg was doing and saying. Defendant does not know which of the two agents made the alleged remarks and the Government has put forward little to no evidence rebutting the possibility that they were made by Special Agent Dunn's partner. Even if the Court adopts Special Agent Dunn's belief that it was not his general practice to make these kinds of remarks, the Court could not find that Special Agent Freudenberg did not make such statements.

The Court might see this differently if the Government had offered any explanation of what the agents did say that could have reasonably caused defendant to start talking but which were not of a nature to deliberately stimulate her statements. But Special Agent Dunn's memory was blank on this, as was his report, and the Government has not set forth any specific facts to rebut the claim that defendant made the statements in response to the interrogative remarks.

The Court turns to whether the agents' conduct in the car amounted to an interrogation, and if so, whether defendant made the incriminating statements voluntarily instead of as a result of the interrogation. Because defendant didn't "initiate" a conversation merely by asking where the agents were taking her, see id., that question plays no part in the analysis.

6

Defendant was arrested in a foreign country and brought to a private room manned by law-enforcement. She was then picked up by two male federal agents equipped with firearms and brought to a vehicle in handcuffs. She didn't know where the agents were taking her or for how long. And according to Special Agent Dunn's testimony, defendant was crying and upset during the car ride.

The agents should have known that saying "crying won't help you" and then suggesting that cooperating with the agents could have eased her plight was "reasonably likely to elicit an incriminating response." A person in defendant's situation could have interpreted these remarks as offering a safety rope to freedom – as if to say: *although crying won't help you get out of this situation, talking to us might.* The Government's suggestion that because the alleged comments referred to a choice made in the past, it couldn't have been perceived as a current offer, is not persuasive. Given the "totality of all the surrounding circumstances," see Anderson, 929 F.2d at 99, the agent's past subjective comments could have easily sounded like a present perfect opportunity to get out of trouble. The comments, if made, were therefore interrogative.

Moreover, the undisputed facts support a finding that defendant would not have made the incriminating statements unless the agents did something to elicit them. Prior to entering the car, defendant had been read her Miranda rights at least twice, in response to which she affirmatively invoked her right to speak to counsel and to not talk to the authorities. Defendant further signed a written statement saying the same. Significantly, defendant did not cooperate with the agents the first time they suggested a controlled delivery, when there was no apparent benefit for her to

reap. It would be unlikely for defendant to spontaneously start talking just a few hours later in response to the same offer, absent the additional enticement.

The motion to suppress is granted to the extent set forth above.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       November 4, 2019